Michael Lee (ML 6353)
Lee Law PLLC
579 Fifth Avenue, 14th Floor
New York, NY 10017
Telephone: (212) 621-8239
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| FOSSIL GROUP, INC. and MICHAEL KORS, L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> EXTENDED DEALS INC.; WORLD OF ACCESSORIES, INC.; PESHA FRIEDMAN, also known as "PESHY FRIEDMAN," doing business as "STAR DISTRIBUTION" and "APPERTRONICS;" and CHAYA KATZ and JACOB KATZ, also doing business as "APPERTRONICS;" THE ESTATE OF JACOB KATZ; MOSHE FRIEDMAN, also known as "MARK FREED" doing business as "SKUZONE" and "STAR DISTRIBUTION;" and JOHN DOES 3-5, <br><br> Defendants. | CASE NO.  1:20-cv-05277 (AMD)(RLM) <br><br><br><br> **FIRST AMENDED COMPLAINT** |

Fossil Group, Inc. ("Fossil Group") and Michael Kors, L.L.C. ("Michael Kors") (Fossil and Michael Kors are hereinafter collectively referred to as "Plaintiffs") by and through their attorneys of record, complaining of defendants Extended Deals Inc.; World of Accessories, Inc.; Chaya Katz; Pesha Friedman, also known as "Peshy Friedman," doing business as "Star Distribution" and "Appertronics;" and Jacob Katz, also doing business as "Appertronics;" the Estate of Jacob Katz; Moshe Friedman, also known as "Mark Freed," doing business as "SkuZone" and "Star Distribution;" and John Does 3-5 (hereinafter collectively referred to as "Defendants")

hereby allege as follows:

## STATEMENT OF THE CASE

1.      Plaintiffs are the designer and distributor of some of the most iconic, world-famous, and recognizable time pieces in the world. Unfortunately, great success attracts clandestine companies and individuals unjustly enriching themselves by distributing cheap unauthorized imitation watches in order to fool unsuspecting consumers and the public.

2.      This action is the culmination of a widespread investigation into the illegal acts of Defendants who have knowingly and willfully conspired to defraud Plaintiffs and the public at large. This case concerns the importation, offering for sale, actual sale, and other distribution of a significant amount of merchandise bearing counterfeits and infringements of Michael Kors' distinctive trademarks on watches made and distributed by Fossil Group. Plaintiffs are forced to take action against Defendants who have failed to stop distributing their knock-off products despite being put on notice of their infringement.

3.      By this conduct, Defendants have willfully infringed Michael Kors' valuable trademarks, creating a strong likelihood of confusion among consumers who expect that merchandise bearing marks confusingly similar to the Michael Kors' trademark is genuine Michael Kors product when it is not. Further, Defendants actions tarnish the goodwill associated with the Plaintiffs and with its watches.

4.      Plaintiffs have expended a great amount of resources working to create and distribute their luxury line of products and they are compelled to take action for (i) trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1114(a); (ii) federal trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (iii) unfair competition, false designation or origin and false description in violation of Section 43(a)

of the Lanham Act, 15 U.S.C. § 1125(a); (iv) unlawful importation of goods bearing registered United States trademarks in violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a); and (v) unfair and deceptive business practices in violation of N.Y.Gen.Bus.L. § 349. The aforementioned conduct is causing monetary damage and other irreparable injuries to the general public and Plaintiffs.

## PARTIES

5.      Fossil Group, Inc. is a Delaware corporation with its principal place of business located at 901 South Central Expressway, Richardson, TX 75080.

6.      Michael Kors, L.L.C. is a Delaware limited liability company with its principal place of business located at 11 West 42nd Street, New York, NY 10036.

7.      Upon information and belief, Defendant Extended Deals Inc. ("Extended Deals") is a New York corporation with its principal place of business located at 954 51st Street, Brooklyn, NY 11219.

8.      Upon information and belief, Defendant World of Accessories, Inc. ("World of Accessories") is a New Jersey corporation with its principal place of business located at 54 Freeman Street, Newark, NJ 07105.

9.      Upon information and belief, Defendant Pesha Friedman, also known as Peshy Friedman ("Pesha"), is the Chief Executive Officer of World of Accessories and therefore has the right and ability to control the actions of the corporate Defendant. Pesha resides at 11 Orchard Court, Lakewood, NJ 08701.

10.     Upon information and belief, Defendant Jacob Katz ("Jacob") was the Chief Executive Officer of Extended Deals and the President of World of Accessories and therefore had the right and ability to control the actions of the corporate Defendants. Katz resided at 15 Sumter

3

Road, Airmont, NY 10952 and owns/owned the property located at 954 51st Street, Brooklyn, NY 11219.

11.     Upon information an belief, Defendant Chaya Katz ("Chaya"), is the Secretary of World of Accessories and the Secretary of World of Accessories and therefore has the right and ability to control the actions of the corporate Defendants. Chaya resides at 15 Sumter Road, Airmont, NY 10952.

12.     Upon information and belief, Defendant the Estate of Jacob Katz ("Estate") is the surviving legal interests and entitlements of Jacob. Chaya is the Executor of the Estate.

13.     Upon information and belief, Defendant Moshe Friedman, also known as Mark Freed ("Moshe") is the operator of the Amazon.com account known as "SkuZone." Moshe is the husband of Pesha and also resides at 11 Orchard Court, Lakewood, NJ 08701.

14.     The identity of John Does 3-5 are not currently known to Plaintiffs. Upon information and belief, they are associated with Defendants and have contributed to Defendants' unlawful activities. Plaintiffs will use its best efforts to identify these individuals, and upon further knowledge and investigation, Plaintiffs will amend their pleadings accordingly.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the federal trademark claims asserted in this action under 15 U.S.C. § 1121, and 28 U.S.C. § 1331 and 28 U.S.C. § 1338. This Court has supplemental subject matter jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a) in that the state law claims form part of the same case or controversy as the federal claims.

16.     Upon information and belief, Defendants are subject to the Court's jurisdiction because they have committed the acts complained of herein in this District and do business in this District and a certain of the Defendants reside in this District. Upon information and belief,

Defendants are selling Defendants' infringing products in this District.

17.    Defendants are subject to the jurisdiction of this Court pursuant to and in accordance with Rule 4 of the Federal Rules of Civil Procedure.

18.    Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) (1), (2), and (3).

### FACTUAL ALLEGATIONS

**A.  Fossil Group, Michael Kors, and the Michael Kors Trademarks**

19.    Fossil Group is a global design, marketing, distribution, and innovation company specializing in a variety of lifestyle accessories. Under a diverse portfolio of owned and licensed brands, Fossil Group makes fashion watches, jewelry, handbags, small leather goods and wearables. Fossil Group stores are operated in some of the most prestigious cities in the world with more than 284 stores in many different countries. In addition, Fossil is licensed to manufacture, market, distribute and sell watches under a number of prestigious high quality fashion brands including but not limited to PUMA, Diesel, Emporio Armani, DKNY, Kate Spade New York, Tory Burch and Michael Kors, among others. Fossil Group has been licensed by Michael Kors to manufacture and distribute watches bearing the Michael Kors trademarks since 2004.

20.    Michael Kors is a global, luxury, and lifestyle brand, founded in 1981, which designs, markets, and distributes a wide variety of high-quality merchandise including, but not limited to, apparel, handbags, wallets, watches, footwear, jewelry, and other accessories. Michael Kors stores are operated, either directly or through licensing partners, in some of the most prestigious cities in the world with more than 550 stores and 1,500 in-store boutiques in many different countries. Michael Kors has licensed the manufacturing and distributing of its watches to Fossil Group.

5

21.    Since inception, Michael Kors has used the MICHAEL KORS trademark and trade name to distinguish its fine quality merchandise.   Michael Kors has licensed such use of its trademarks to Fossil Group with respect to watches.   Throughout its storied history, Michael Kors has expended great amounts of time, money, and effort advertising and promoting its trademarks globally, including throughout the United States and in this District. As a result of these investments and its widespread success, Michel Kors has developed considerable goodwill and a reputation for the highest quality products. Michael Kors has continuously used its trademarks to distinguish its products and uphold this reputation.

22.    Michael Kors is the owner of various trademarks registered with the United States Patent and Trademark Office ("USPTO"). Such trademarks include, but are not limited to the following, among others:

| Trademark | USPTO Registration Number | Registration Date | Goods |
|---|---|---|---|
| MK MICHAEL KORS | 3,535,310 | 11/18/2008 | IC 014. US 002 027 028 050. G & S: watches. |
| MICHAEL KORS | 3,160,981 | 10/17/2006 | IC 014. US 002 027 028 050. G & S: Watches. |
| MICHAEL MICHAEL KORS | 4,052,752 | 11/08/2011 | IC 014. US 002 027 028 050. G & S: Jewelry and watches. |
| MICHAEL KORS ACCESS | 5,571,026 | 09/24/2018 | IC 009. US 021 023 026 036 038. G & S: Wireless communication devices featuring telecommunication functionality to allow the transmission of text, data, audio, image and video files; electronic monitoring devices comprised of microprocessors and accelerometers, for identifying, storing, reporting, monitoring, uploading and downloading data and |

| | | | |
|---|---|---|---|
| | | | information for personal physical fitness and training purposes; downloadable mobile applications and software for smart watches and mobile devices for processing, reviewing and editing data to enable users to control the presentation and information available from the devices; wearable sensors for personal physical fitness and training purposes to gather biometric data and also including monitors and displays sold as a unit; Smart watches comprised primarily of wristwatches and also featuring software for sending and receiving data or to be used to monitor personal fitness activity; wearable digital electronic devices comprised primarily of wristwatches, bracelets, rings, or necklaces and also featuring software for sending and receiving data or to be used to monitor personal fitness activity.<br><br>IC 010. US 026 039 044. G & S: Wearable sensors for health and wellness purposes to gather biometric data and also including monitors and displays sold as a unit.<br><br>IC 014. US 002 027 028 050. G & S: Jewelry.<br><br>IC 042. US 100 101. G & S: Software as a service featuring software to identify, store, report, monitor, upload and download data and information from a wearable digital electronic device. |
| MICHAEL KORS | 5,287,170 | 09/12/2017 | IC 009. US 021 023 026 036 038. G & S: Wireless communication devices featuring telecommunication functionality to allow the transmission of text, data, audio, image and video files; electronic monitoring devices comprised of microprocessors |

|  |  |  | and accelerometers, for identifying, storing, reporting, monitoring, uploading and downloading data and information for personal physical fitness and training purposes; downloadable mobile applications and software for smart watches and mobile devices for processing, reviewing and editing data to enable users to control the presentation and information available from the devices; wearable sensors for personal physical fitness and training purposes to gather biometric data and also including monitors and displays sold as a unit; smart watches comprised primarily of wristwatches and also featuring software for sending and receiving data or to be used to monitor personal fitness activity; wearable digital electronic devices comprised primarily of wristwatches, bracelets, rings, or necklaces and also featuring software for sending and receiving data or to be used to monitor personal fitness activity.

IC 010. US 026 039 044. G & S: Wearable sensors for health and wellness purposes to gather biometric data and also including monitors and displays sold as a unit.

IC 014. US 002 027 028 050. G & S: Horological and chronometric instruments, watches, timepieces, watch straps, watch bands; jewelry.

IC 042. US 100 101. G & S: Software as a service featuring software to identify, store, report, monitor, upload and download data and information from a wearable digital electronic device. |
|---|---|---|---|

| JETMASTER | 4,771,775 | 07/14/2015 | IC 014. US 002 027 028 050. G & S: Watches. |
|---|---|---|---|

(hereinafter collectively referred to as the "Michael Kors Trademarks").

23.     The Michael Kors Trademarks are valid, in full force and effect, protectable, and exclusively owned by Michael Kors and licensed to Fossil Group. Michael Kors has continuously used the Michael Kors Trademarks during all time periods relevant to Plaintiffs' claims and Fossil Group has continuously used the Michael Kors Trademarks on its watches during all time periods relevant to Plaintiffs' claims

24.     The Michael Kors Trademarks have been used regularly in interstate commerce, including within this District, to identify and distinguish Plaintiffs' high-quality watches manufactured by Fossil Group.

25.     Due to the overwhelming amount of resources exhausted by Plaintiffs in order to create, protect, enforce, and promote the Michael Kors Trademarks, the Michael Kors Trademarks have achieved secondary meaning as identifiers of high-quality watches.

26.     The Michael Kors Trademarks are well-known and recognized around the world and throughout the United States by consumers as signifying authentic, high quality Michael Kors products. As such, the Michael Kors Trademarks qualify as famous marks as the term is used in 15 U.S.C. § 1125(c)(1) and achieved such fame prior to Defendants' conduct that is the subject of this Complaint.

**B. Defendants' Unauthorized Activities**

27.     Upon information and belief, Defendants are conspiring in their illegal actions of importing, offering for sale, selling, and using in interstate commerce watches bearing counterfeits and infringements of the Michael Kors Trademarks (the "Infringing Products").

28.     Defendants are the importers and distributors of a large amount of Infringing Products. Furthermore, Defendants were specifically put on notice about their illegal activities but continued to sell such illicit watches. Defendants are therefore willful infringers of the Michael Kors Trademarks causing irreparable harm to Plaintiffs and the unsuspecting public who are being defrauded into purchasing such illegal merchandise.

29.     The criminal actions detailed in this Complaint are voluminous but merely the tip of the iceberg of Defendants' illegal activities.

30.     First, Plaintiffs became aware of the illegal activities of Extended Deals, Jacob, Chaya, and Pesha.

31.     U.S. Customs & Border Protection ("Customs") periodically conducts inspections of merchandise imported into the United States. Pursuant to one such inspection that occurred on or about October 2, 2018 (incorrectly dated by Customs for 2019), Customs provided Plaintiffs with a Notice of Seizure of Infringing Merchandise ("Notice of Seizure 1") identifying Extended Deals as the importer of record of 60 "Michael Kors" Watches. Customs determined that these watches were Infringing Product and seized said product.

32.     The Notice of Seizure 1 identified the address of Extended Deals as 54 Freeman Street, Newark, NJ 07105, which is an exact match for the business address of World of Accessories.

33.     Upon information and belief, Jacob is/was the Chief Executive Officer of Extended Deals and Chaya is the Secretary of Extended Deals and both are/were directly involved with the unauthorized activities described herein and therefore personally liable for the infringement of the Michael Kors Trademarks.

34.     Thereafter, on or about June 19, 2019, Michael Kors sent Extended Deals a cease and desist letter, putting them on specific notice of their illegal activities, demanding that they immediately cease the importation and sale of any Infringing Products, and comply with further demands. Extended Deals did not respond to this letter.

35.     Despite the Notice of Seizure 1 and the first cease and desist letter, Defendants continued to infringe the Michael Kors Trademarks.

36.     Second, Plaintiffs became aware of the related illegal activities of World of Accessories, Pesha, Jacob, and Chaya.

37.     Upon information and belief, defendants World of Accessories, Pesha, Jacob, and Chaya had been offering for sale and selling a large amount of Infringing Products on the Amazon.com website ("Amazon"), among other places, using the "Appertronics" user name, causing Plaintiffs to investigate such activities.

38.     According to its Amazon storefront, over the last one (1) year, the "Appertronics" Amazon seller has sold approximately 900 items through their Amazon online storefront. At least three percent (3%) of the feedback left for those items are negative, with several referencing purchases of as incorrect, defective, damaged, and not as advertised.

39.     On or about January 2019, Fossil Group's agent made a purchase from the "Appertronics" Amazon seller of a "Michael Kors" watch ("Appertronics Purchase 1").

40.     Subsequently, Fossil Group received and reviewed the Appertronics Purchase 1 and confirmed that the Appertronics Purchase 1 was not authentic Michael Kors merchandise and did, in fact, bear counterfeits and infringements of the Michael Kors Trademarks.

41.     Following the Appertronics Purchase 1, the Infringing Product was reported to Amazon, who then notified the seller of this report.

11

42.     Despite being put on full notice by Amazon, the "Appertronics" Amazon seller continued to sell Infringing Products.

43.     On or about June 2019,  Fossil Group's agent made another purchase from the "Appertronics" Amazon seller of  a "Michael Kors" watch ( "Appertronics Purchase 2").

44.     Subsequently, Fossil Group received and reviewed the Appertronics Purchase 2 and confirmed that the Appertronics Purchase 2 was not authentic Michael Kors merchandise and did, in fact, bear counterfeits and infringements of the Michael Kors Trademarks.

45.     Following the Appertronics Purchase 2, the Infringing Product was again reported to Amazon, who then notified the seller of this report. Despite being put on full notice by Amazon, the "Appertronics" Amazon seller continued to sell Infringing Products. (Appertronics Purchase 1 and Appertronics Purchase 2 are hereinafter collectively referred to as the "Appertronics Purchases").

46.     Upon reporting the Appertronics Purchases to Amazon as counterfeit, Amazon informed Fossil Group that the "Appertronics" Amazon seller account was registered in the names of "Jacob Katz" and "Peshy Friedman" using the email addresses jacob@shopcell.com and peshy@shopcell.com. Upon information and belief and investigation, these two individuals are defendants Pesha and Jacob.

47.     Further, Amazon disclosed that the Appertronics Amazon Seller listed, *inter alia*, the following addresses associated with the account: 54 Freeman Street, Newark, NJ 07105 and 11 Orchard Court, Lakewood, NJ 08701. Upon information, belief , and investigation, the Freeman address is the registered and place of business for World of Accessories and also Extended Deals. Upon information, belief, and investigation, the Lakewood address is the home address for Pesha and Moshe.

48. World of Accessories and the Appertronics Amazon seller accounts are/were owned by and/or controlled by its officers: Pesha, Jacob, and Chaya who are directly involved with the unauthorized activities described herein and therefore personally liable for the infringement of the Michael Kors Trademarks.

49. Further, Defendants importation of Infringing Products continued concurrently with its distribution of Infringing Products.

50. Pursuant to another such inspection that occurred on or about December 3, 2019, Customs provided Plaintiffs with a Notice of Seizure of Infringing Merchandise ("Notice of Seizure 2") identifying "J&P" as the importer of record of 60 "Michael Kors" Watches. Customs determined that these watches were Infringing Product and seized said product.

51. The Notice of Seizure 2 identified the address of "J&P" (presumably "Jacob and Pesha") as 11 Orchard Court, Lakewood, NJ 08701, which is an exact match for the home address of defendants Pesha and Moshe.

52. Despite the Notice of Seizure 1 and Notice of Seizure 2, Defendants continued to illegally import Infringing Product into the United States.

53. Pursuant to another such inspection that occurred on or about January 26, 2020, Customs provided Plaintiffs with a Notice of Seizure of Infringing Merchandise ("Notice of Seizure 3") identifying "Star Distribution" as the importer of record of 90 "Michael Kors" Watches. Customs determined that these watches were Infringing Product and seized said product.

54. The Notice of Seizure 3 identified the address of "Star Distribution" as 11 Orchard Court, Lakewood, NJ 08701, which is an exact match for the home address of defendants Pesha and Moshe.

55.     Despite being put on full notice by Customs at least three times of their illegal activities, Defendants continued to sell Infringing Products.

56.     On or about March 6, 2020, Fossil Group sent Pesha and Jacob a cease and desist letter, putting them on specific notice of their illegal activities, demanding that they immediately cease the sale of any Infringing Products, and comply with further demands.

57.     Thereafter, on or about March 11, 2020, Fossil Group's attorney received a voicemail from an unidentified person calling from the phone number: (973) 368-2214, asking for a call back. This phone number is owned by and associated with World of Accessories.

58.     On the same day, Fossil Group's attorney returned the message and spoke with "David Greenburg." "Mr. Greenburg" identified himself as the Chief Executive Officer of World of Accessories and stated that Pesha and Jacob were removed from the company in mid-August 2019 and he would look into the matter further and get back to Fossil Group's attorney.

59.     On or about April 10, 2020, after not hearing back from "Mr. Greenburg," Fossil Group's attorney telephoned World of Accessories and was informed by the person answering that a "David Greenburg" does not work at World of Accessories and is not the Chief Executive Officer of World of Accessories.

60.     It is clear that World of Accessories, Pesha, Jacob, and Chaya's clandestine actions further evidence that their infringement of the Michael Kors Trademarks is knowing and willful.

61.     Third, through a seemingly independent investigation of the "SkuZone" Amazon seller, Plaintiffs became aware of the ties to Defendants and the related illegal activities of Moshe.

62.     Upon information and belief, Pesha's husband, Moshe, had also been offering for sale and selling a large amount of Infringing Products on Amazon among other places, using the "SkuZone" username, causing Plaintiffs to investigate such activities.

63.     According to its Amazon storefront, over the last one (1) year, the "SkuZone" Amazon seller has sold over 25 items through their Amazon online storefront. At least twelve percent (12%) of the feedback left for those items are negative, with several referencing purchases as "bad replicas" of Michael Kors products, "knock-offs", and being of lesser quality. One feedback reads as follows: *"This is a bad replica of the original. IT IS NOT ORIGINAL! Take a picture and send it to MK customer service! They'll enlighten you!"*

64.     Defendants were therefore put on prior notice of this infringement by their customers and have knowingly continued to distribute Infringing Products.

65.     During routine brand protection efforts on Amazon, on or about November 2019, Fossil Group's agent made a purchase from the "SkuZone" Amazon seller of four (4) "Michael Kors" watches ("SkuZone Purchases 1-4").

66.     Subsequently, Fossil Group received and reviewed the SkuZone Purchases 1-4 and confirmed that all were not authentic Michael Kors merchandise and did, in fact, bear counterfeits and infringements of the Michael Kors Trademarks.

67.     Following the SkuZone Purchase 1-4, the Infringing Products were reported to Amazon, who then notified the seller of this report.

68.     Despite being put on full notice by Amazon, the "SkuZone" Amazon seller continued to sell Infringing Products.

69.     On or about December and January 2020, Fossil Group's agent made separate purchases from the "SkuZone" Amazon seller of four (4) additional "Michael Kors" watches ("SkuZone Purchases 5-8").

70.     Subsequently, Fossil Group received and reviewed the SkuZone Purchases 5-8 and confirmed that all were not authentic Michael Kors merchandise and did, in fact, bear counterfeits and infringements of the Michael Kors Trademarks.

71.     Following each of the SkuZone Purchases 5-8, the Infringing Products were separately reported to Amazon, who then notified the seller of these reports.

72.     Also, at this same time, Moshe received notice that the products he was selling were illegal when the Notice of Seizure 2 and Notice of Seizure 3 were sent to his home address.

73.     On or about February 4, 2020, Fossil Group sent the "SkuZone" Amazon seller a cease and desist letter, putting them on specific notice of their illegal activities, demanding that they immediately cease the sale of any Infringing Products, and comply with further demands. There was no response to this letter.

74.     Sometime after this letter, Amazon revealed that the owner of the "SkuZone" Amazon seller store was "Mark Freed" with a New York based phone number. Through a reverse lookup of the number, it was determined that this number is owned by Moshe.

75.     On or about March 6, 2020, Fossil Group's attorney telephoned Moshe at this New York based phone number. When Fossil Group's attorney identified himself, Moshe said, "I don't want to talk to you" and hung up the call. Follow up emails to Moshe were similarly ignored.

76.     It is clear that the repeated sales after having notice of his illegal activities demonstrates that Moshe's infringement of the Michael Kors Trademarks was knowing and willful.

77.     There is a direct connection between the "Appertronics" Amazon seller and the "SkuZone" Amazon seller store since defendants Pesha and Moshe are married and acting in concert. Both the "Appertronics" Amazon seller and the "SkuZone" Amazon seller are using this

same Orchard Court address in association with their respective Amazon seller accounts. Further, the "Appertronics" Amazon seller and the "SkuZone" Amazon seller are both doing business from this Orchard Court address. Further, upon information and belief, the "Appertronics" Amazon seller and the "SkuZone" Amazon seller are using this same Orchard Street address to import Infringing Products which is then sold through Amazon.

78.     Subsequent to the filing of the herein Complaint, Plaintiffs received information that Jacob had recently passed away and the property Jacob owned is attempting to be sold by the Estate under the authority of its executor, Chaya.

79.     Upon information and belief, Defendants are acting in concert and conspiring to offer for sale and sell Infringing Products.

80.     Based upon the consistent negative feedback of their products from buyers on Amazon, the information supplied to Defendants in Fossil Group's cease and desist letters, the Notice of Seizure 1, the Notice of Seizure 2, and the Notice of Seizure 3, Defendants were fully aware of their illegal activities and it is clear that Defendants' infringement of the Michael Kors Trademarks is willful. Further, Defendants continued to sell Infringing Products after being placed on full notice by Amazon, further demonstrating that Defendants' infringement is clearly willful.

81.     Defendants' importation, offer for sale, and actual sale of the Infringing Products constitutes an illegal use in commerce of the Michael Kors Trademarks in connection with the importation, sale, offering for sale, or distribution of the Infringing Products.

82.     The Infringing Products offered for sale and sold by Defendants were not manufactured, authorized, imported, or sponsored by Plaintiffs. Thus, consumers will be confused and disappointed by the differences between the Infringing Products distributed by Defendants and the genuine Michael Kors merchandise manufactured and sold by Fossil Group.

83.     As a result of Defendants' actions, Plaintiffs are losing profits from lost sales of genuine product, suffering a loss of enormous goodwill created in its Michael Kors Trademarks and in Fossil Group, and will continue to suffer such loss if Defendants are allowed to continue their illegal activity.

84.     Upon information and belief, Defendants have knowingly and willfully engaged in their illicit activities in direct violation of Plaintiffs' rights and/or has shown a blatant disregard for the same. For these reasons, this qualifies as an exceptional case under 15 U.S.C. § 1117(a).

85.     Plaintiffs have suffered irreparable injury as a direct and proximate result of Defendants' wrongful importation and distribution of the Infringing Products.

86.     Plaintiffs have no adequate remedy at law.

87.     Defendants' unlawful acts will undoubtedly persist without judicial intervention. As such, Defendants must be restrained and enjoined from further violating Plaintiffs' well-established rights in and to the Michael Kors Trademarks.

## FIRST CLAIM FOR RELIEF
### (Trademark Counterfeiting, 15 U.S.C. § 1114)

88.     Plaintiffs hereby re-allege and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 87.

89.     Defendants have knowingly, intentionally, and without the consent of Plaintiffs used in commerce reproductions, counterfeits, and/or copies and/or spurious designations that are identical with, or substantially indistinguishable from the Michael Kors Trademarks in connection with the sale, offering for sale, distribution, or advertising of goods covered by USPTO registrations for the Michael Kors Trademarks. Such use is likely to: cause confusion or mistake or deceive consumers; cause consumers to believe Defendants' counterfeit merchandise is

affiliated with, sponsored by, authorized or approved by, or is otherwise associated with Plaintiffs despite the fact that it is not.

90.     Defendants have intentionally used these reproductions, counterfeits, and/or copies and/or spurious designations that are identical with, or substantially indistinguishable from  the Michael Kors Trademarks, knowing they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods.

91.     Defendants' use of the Michael Kors Trademarks to advertise, promote, offer for sale, distribute and sell goods bearing counterfeits was and is without the consent of Plaintiffs.

92.     Defendants' use of the counterfeit marks was willful and done with the knowledge that the marks are counterfeit, and as such, Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

93.     Defendants' acts constitute use in commerce of the Michael Kors Trademarks.

94.     For the aforementioned reasons, Plaintiffs are entitled to: (a) damages for all of Defendants' profits derived from their unlawful conduct and/or Plaintiffs' lost profits from sales of genuine goods due to Defendants' conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. § 1117(a)-(b), or alternatively, statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest according to 15 U.S.C. § 1117(b).

95.     Plaintiffs have no adequate remedy at law for Defendants' ongoing wrongful conduct. Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

**SECOND CLAIM FOR RELIEF**
**(Trademark Infringement, 15 U.S.C. §1114)**

96.     Plaintiffs hereby re-allege and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 87.

97.     Based on Plaintiffs' extensive advertising under the Michael Kors Trademarks, its extensive sales and the wide popularity of Michael Kors products, the Michael Kors Trademarks have acquired secondary meaning such that any product and advertisement bearing such trademarks is immediately associated by purchaser and the public as being a product and affiliate of Plaintiffs.

98.     Defendants' activities constitute Defendants' use in commerce of the Michael Kors Trademarks. Defendants use the Michael Kors Trademarks in connection with Defendants' sale, offers for sale, distribution, promotion, and advertisement of their goods bearing infringements and/or counterfeits of the Michael Kors Trademarks.

99.     Defendants have used the Michael Kors Trademarks, knowing that they are the exclusive property of Plaintiffs, in connection with their sale, offers for sale, distribution, promotion, and advertisement of their goods bearing counterfeits or infringements of the Michael Kors Trademarks.

100.     Defendants' activities create the false and misleading impression that Defendants are sanctioned, assigned, or authorized by Plaintiffs to use the Michael Kors Trademarks to advertise, manufacture, distribute, offer for sale, or sell goods bearing the Michael Kors Trademarks when Defendants are not so authorized.

101.     Defendants engage in the aforementioned activity with the intent to confuse and deceive the public into believing that they and the goods they sell are in some way sponsored,

affiliated, or associated with Plaintiffs, when in fact they are not.

102.    Defendants' use of the Michael Kors Trademarks has been without the consent of Plaintiffs, is likely to cause confusion and mistake in the minds of the public and, in particular, tends to and does falsely create the impression that the goods advertised, promoted, distributed, and sold by Defendants are warranted, authorized, sponsored, or approved by Plaintiffs when, in fact, they are not.

103.    Defendants' unauthorized use of the Michael Kors Trademarks has resulted in Defendants unfairly benefiting from Plaintiffs' advertising and promotion, and profiting from the reputation of Plaintiffs and the Michael Kors Trademarks, to the substantial and irreparable injury of the public, Plaintiffs, and the Michael Kors Trademarks and the substantial goodwill represented thereby.

104.    Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

105.    By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) an amount representing three (3) times Plaintiffs' damages and/or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

106.    Plaintiffs have no adequate remedy at law for Defendants' ongoing wrongful conduct. Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## THIRD CLAIM FOR RELIEF
### (Unfair Competition, False Designation of Origin & False Description, 15 U.S.C. §1125(a))

107.    Plaintiffs hereby re-allege and incorporate by reference all prior allegations as set

forth in Paragraphs 1 through 87.

108.   Defendants' sale, offering for sale, distribution, or advertising of goods bearing the Michael Kors Trademarks constitutes use in commerce of false designations of origin and false and misleading descriptions and representations that Defendants' counterfeit merchandise is affiliated with, sponsored by, authorized or approved by, or is otherwise associated with Plaintiffs despite the fact that it is not. As a result of Defendants' unauthorized use of the Michael Kors Trademarks, the public is likely to be misled and confused as to the source, sponsorship, or affiliation of Defendants' counterfeit merchandise.

109.   Defendants' sale, offering for sale, distribution, or advertising of goods bearing the Michael Kors Trademarks constitutes unfair competition as it is intended to cause confusion and deceive consumers and trades upon the established reputation and goodwill of Plaintiffs.

110.   Defendants' conduct is willful, intended to reap the benefit of Plaintiffs' established goodwill, and violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), all to the severe detriment of Plaintiffs.

111.   Defendants' acts entitle Plaintiffs to damages for all of Defendants' profits derived from their past unlawful conduct and/or for all of Plaintiffs' lost profits from lost sales of genuine goods due to Defendants' conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. §1117(c).

112.   Plaintiffs have no adequate remedy at law for Defendants' ongoing wrongful conduct. Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

**FOURTH CLAIM FOR RELIEF**
**(Federal Trademark Dilution, 15 U.S.C. § 1125(c))**

113.     Plaintiffs hereby re-allege and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 87.

114.     Defendants' use of the Michael Kors Trademarks or marks confusingly similar thereto in order to sell their products constitutes Defendants' commercial use in commerce of the Michael Kors Trademarks.

115.     The Michael Kors Trademarks are world famous and distinctive. They achieved such status long prior to Defendants' activities complained of herein.

116.     Defendants' use of the Michael Kors Trademarks on the Internet to advertise unauthorized merchandise constitutes tarnishment of the Michael Kors Trademarks.

117.     Plaintiffs are suffering and will continue to suffer irreparable harm from Defendants' dilutive activities.

118.     Defendants' acts as aforesaid are diluting the distinctive quality of the Michael Kors Trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

119.     Defendant have intentionally and willfully appropriated the Michael Kors Trademarks and traded on Plaintiffs' reputations.

120.     Defendants' wrongful acts of dilution will continue unless enjoined by this Court.

**FIFTH CLAIM FOR RELIEF**
**(Unlawful Importation of Goods Bearing Registered United States Trademarks in Violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a))**

121.     Plaintiffs hereby re-allege and incorporate by reference all prior allegations as set forth in Paragraphs 1 through 87.

122.     Defendants' acts alleged herein constitute the importation of merchandise which

bears imitations of the Michael Kors Trademarks without Plaintiffs' consent, in violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a).

123.    Defendants' use of the infringing marks was willful, intentional, and done with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

124.    Defendants' acts entitle Plaintiffs to damages for all of Defendants' profits derived from their past unlawful conduct and/or for all of Plaintiffs' lost profits from lost sales of genuine goods due to Defendants' conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. § 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

125.    Plaintiffs have no adequate remedy at law for Defendants' ongoing wrongful conduct. Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

## SIXTH CLAIM FOR RELIEF:
### UNFAIR AND DECEPTIVE BUSINESS PRACTICES
### (N.Y. Gen. Bus. L. § 349)

126.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 87 of this Complaint.

127.    The wrongful conduct of Defendants, including but not limited to the distribution of Infringing Product, is deceptive trade practices under New York General Business Law § 349.

128.    This wrongful conduct was consumer-oriented within the meaning of Section 349 as it is the intent of Defendants to distribute Infringing Products into the marketplace and therefore harm the general consuming public.

129.    Because of this deceptive conduct, Plaintiffs have been and will continue to be

damaged both monetarily and in ways impossible to remedy through monetary judgment.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request that the Court order the following relief:

I.       That the Court enter an injunction ordering that Defendant, their agents, servants, employees, and all other persons in privity or acting in concert with them be enjoined and restrained from:

a)   using any counterfeit or infringement of the Michael Kors Trademarks to identify any goods not authorized by Plaintiffs;

b)   counterfeiting or infringing the Michael Kors Trademarks by importing, manufacturing, distributing, selling, offering for sale, advertising, promoting, displaying any products bearing any simulation, reproduction, counterfeit, or copy of the Michael Kors Trademarks;

c)   using any simulation, reproduction, counterfeit, or copy of the Michael Kors Trademarks in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiffs, or to any goods sold, manufactured, sponsored or approved by, or connected with Plaintiffs,

d)   making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services provided, products manufactured, distributed, sold or offered for sale, or rented by Defendant are in any way associated or connected with Plaintiffs;

e)   engaging in any other conduct constituting an infringement of the Michael Kors Trademarks, of Plaintiffs' rights in, or to use or to exploit, said trademark, or constituting any weakening of Plaintiffs' names, reputations, and goodwill.

II.       That Defendants be required to deliver to Plaintiffs for destruction all unauthorized materials bearing any of the Michael Kors Trademarks in association with unauthorized goods and the means for production of same pursuant to 15 U.S.C. § 1118.

III.       Requiring Defendants to pay to Plaintiffs such damages for all of Defendants' profits derived from their unlawful conduct and/or Plaintiffs' lost profits from sales of genuine goods due

to Defendants' infringement, counterfeiting, false designation of origin, unfair competition trebled to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. § 1117(a)-(b), or alternatively, statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act.

IV.     Ordering that Defendant compensate Plaintiffs for the costs of this action, reasonable attorneys' fees, investigative fees and pre-judgment interest according to 15 U.S.C. § 1117(b).

V.     Plaintiffs be awarded their actual damages and attorneys' fees pursuant to N.Y. Gen. Bus. L. § 349.

VI.     Defendant be required to pay pre-judgment interest on all damages and profits awards.

VII.     Directing that this Court retain jurisdiction of this action for the purpose of enabling Plaintiffs to apply to the Court at any time for such further orders and interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

VIII.     Ordering that pursuant to 11 U.S.C. § 523(a)(6), Defendant be prohibited from a discharge under 11 U.S.C. § 727 for malicious, willful, and fraudulent injury to Plaintiffs.

IX.     Awarding to Plaintiffs such other and further relief as the Court may deem just and proper, together with the costs and disbursements that Plaintiffs have incurred in connection with this action.

**LEE LAW PLLC**

Dated: July 7, 2020

Michael Lee (ML 6353)
Lee Law PLLC
579 Fifth Avenue
14th Floor
New York, NY 10017
Telephone: (212) 621-8239

*Attorneys for Plaintiff*

27